UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

YONG SUN,

Petitioner,

v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, et al.,

Respondents.

Case No.: 3:26-cv-00626-RBM-DDL

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[Docs. 1, 3, 6]**

Before the Court are Petitioner Yong Sun's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 (Doc. 1), Motion for Temporary Restraining Order ("TRO Motion") (Doc. 3), and Motion for Immediate Release Pending Adjudication of Habeas Petition ("Motion for Immediate Release") (Doc. 6). For the reasons set forth below, the Petition is **GRANTED** and the TRO Motion and Motion for Immediate Release are **DENIED as moot**.

## I.   BACKGROUND

### A.   Factual Background

Petitioner is a citizen of China who entered the United States on May 3, 2023. (Doc. 1 ¶ 27.)[1]  He was apprehended almost immediately by the Department of Homeland Security ("DHS"), who issued him a Notice to Appear charging him as inadmissible under

---

[1] The Court cites the paragraph numbers of the Petition and the CM/ECF electronic pagination for other filings unless otherwise noted.

section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA") as a noncitizen present in the United States without having been admitted or paroled. (*Id.*; Doc. 9 at 2.) At that time, DHS released Petitioner on his own recognizance. (*See* Doc. 3 at 31; Doc. 1 ¶ 28; Doc. 9 at 2.) Petitioner was re-detained by DHS on May 31, 2025, and has been in the Otay Mesa Detention Center since then. (Doc. 1 ¶ 28.)

On July 7, 2025, Petitioner filed a bond redetermination request. (*See* Doc. 3 at 31.) The immigration judge granted Petitioner's "request for a change in his custody status and imposed a $1,500 bond with Alternatives to Detention at [DHS's] discretion." (*Id.* at 33.) DHS appealed the immigration judge's decision. (*Id.* at 37.) The Board of Immigration Appeals sustained the appeal and vacated the immigration judge's decision, finding that he lacked jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). (*Id.* at 37–38.)

**B.     Procedural Background**

On February 1, 2026, Petitioner filed the Petition. (Doc. 1.) On February 3, 2026, Petitioner filed the TRO Motion. (Doc. 3.) That same day, the Court ordered Respondents to show cause why the Petition and TRO Motion should not be granted by filing a written response. (Doc. 2.) On February 11, 2026, upon the Parties' joint motion, the Court continued the briefing schedule. (*See* Docs. 5, 7.) On February 13, 2026, Respondents filed their Return to Petition ("Response"). (Doc. 9.) Petitioner was authorized to file a reply on or before February 18, 2026 (Doc. 7), but did not file one.

## II.     LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). The petitioner bears the

3:26-cv-00626-RBM-DDL

burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

### III.    DISCUSSION

Petitioner claims that his detention violates the Fifth Amendment's Due Process Clause and the INA.  (Doc. 1 ¶¶ 30–73.)  Specifically, he argues that: (1) if he is detained under 8 U.S.C. § 1225, his detention has become unreasonably prolonged (Doc. 1 ¶¶ 30–64); and, alternatively, (2) if he is detained under 8 U.S.C. § 1226, he is entitled to a bond hearing under that statute or under the court's orders in *Bautista v. Santacruz*[2] (*id.* ¶¶ 65–73).  Respondents argue only that Petitioner is not a member of the class certified in *Bautista* because Petitioner was apprehended upon arrival.  (Doc. 9 at 2.)[3]  For the reasons below, the Court finds that Petitioner is detained under 8 U.S.C § 1226 and is entitled to immediate release.

### A.    Detention Under § 1225 or § 1226

The Court has previously agreed with Respondents' position that similarly situated petitioners are not members of the class certified in *Bautista*.  *See Xie v. LaRose*, Case No.: 3:25-cv-03649-RBM-MSB, 2026 WL 92066, at *2 (S.D. Cal. Jan. 13, 2026) ("Unlike the class members in *Bautista* who entered the United States without apprehension, Petitioner was previously detained, identified as inadmissible, placed in removal proceedings, found to be neither a flight risk nor a danger to the community, and released on his own recognizance.").  For the same reasons here, Petitioner is not a *Bautista* class member.

---

[2]  *See Bautista v. Santacruz*, — F. Supp. 3d —, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

[3]  Respondents state that "Petitioner has filed a habeas petition solely 'to seek enforcement of [his] rights as [a] member[] of the Bond Eligible Class certified in [*Bautista*]'" and that "the petition contains a single cause of action alleging Petitioner is entitled to an individualized bond hearing because he is a member of the 'Bond Eligible Class.'" (Doc. 9 at 1.)  The Petition actually brings three causes of action, and Petitioner seeks a bond hearing not only under *Bautista*, but under 8 U.S.C. § 1226.  (*See* Doc. 1 ¶¶ 30–73, Prayer for Relief.)

3:26-cv-00626-RBM-DDL

The Court's inquiry does not end there, though, as "the fact that [Petitioner] is not a class member does not mean that he is necessarily subject to mandatory detention under § 1225(b)(2)." *Maldonado v. Scott*, Case No. 2:26-cv-00014-TMC, 2026 WL 251819, at *2 (W.D. Wash. Jan. 30, 2026). Instead, "the basis for [a petitioner's] detention requires analysis of the specific facts surrounding his previous interactions with immigration officials." *Id.*; *see also Del Valle Castillo v. Wamsley*, Case No. 2:25-cv-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (explaining that petitioners who were apprehended upon arrival could be subject to detention under § 1226 if the government treated them as subject to discretionary detention since their arrival).

Here, Petitioner was apprehended upon his arrival in the United States in May 2023 and was soon thereafter released on his own recognizance. (Doc. 1 ¶ 28; Doc. 9 at 2.) Petitioner's release on his own recognizance shows that he was initially detained under § 1226(a). *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [Immigration and Naturalization Service] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 215 (D. Mass. 2025) ("Release on recognizance is . . . a form of 'conditional parole' from detention upon a charge of removability, authorized under section 1226."). Indeed, the Court "has previously held that where a petitioner is apprehended at the border, paroled into the country, and had been residing in the country when he was re-detained, his detention is governed by § 1226." *Ayinder v. LaRose*, Case No.: 26-cv-0566-JES-MSB, 2026 WL 296658, at *1 (S.D. Cal. Feb. 4, 2026) (citations omitted). Accordingly, the Court finds that Petitioner's detention is governed by § 1226.

**B.   Due Process**

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the

Court applies the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must consider: (1) "the private interest that will be affected by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

The Court has granted several habeas petitions filed by similarly situated petitioners. For example, in *Faizyan v. Casey*, the Court applied the *Mathews* test and found that the respondents' summary revocation of the petitioner's "conditional parole without an opportunity to be heard deprived [him] of his due process rights." Case No.: 3:25-cv-02884-BM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025); *accord C.A.R.V. v. Wofford*, Case No. 1:25-CV-01395, JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where the petitioner was originally released on an order of release on own recognizance). Here, like in *Faizyan*, Petitioner was released on his own recognizance and lived in the United States for about two years before being re-detained. (Doc. 1 ¶ 28.) The Court thus adopts its reasoning in *Faizyan* and applies it here. For those same reasons, ICE's revocation of Petitioner's release on his own recognizance without a pre-deprivation hearing violates his due process rights and renders his detention unlawful.

## C.   Previous Bond Hearing

The Court finds that immediate release, rather than requiring another bond hearing, is the appropriate remedy. At the July 7, 2025 hearing, the immigration judge ordered Petitioner released on a $1,500 bond along with Alternatives to Detention at DHS's discretion. (Doc. 3 at 33.) As the Court previously reasoned:

> Petitioner has been in immigration custody since [the bond hearing], which means that circumstances have not changed such that the immigration judge's finding should be called into question. Particularly given Respondents' "weighty" interest in the "efficient administration of the immigration laws," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), it does not make sense to require

Respondents to set a new bond hearing before a potentially new immigration judge just to duplicate the same efforts taken at the [July 7], 2025 hearing. Nor would this remedy prejudice Respondents. First, they have not contested the immigration judge's findings or argued that Petitioner poses a flight risk or danger to the community. Second, should Respondents wish to make those arguments, they may do so by appealing the immigration judge's decision to the Board of Immigration Appeals. *See* 8 C.F.R. §§ 1003.19(f), 1003.38(a); *Bui v. Holder*, No. 1:15-cv-0-636-JLT, 2015 WL 3903764, at *3 (E.D. Cal. June 25, 2015).

*Ruiz v. Noem*, Case No.: 3:25-cv-03536-RBM-BJW, 2025 WL 3719888, at *2 (S.D. Cal. Dec. 23, 2025). The Court incorporates its reasoning in *Ruiz* here and reaches the same conclusion.

### IV. CONCLUSION

For the reasons above, the Petition (Doc. 1) is **GRANTED**. Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to a $1,500 bond and the conditions of release set forth in the immigration judge's bond memorandum. (S*ee* Doc. 3 at 31–33).

2. The TRO Motion (Doc. 3) and Motion for Immediate Release (Doc. 6) are **DENIED as moot**.

**IT IS SO ORDERED**.

DATE: February 20, 2026

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:26-cv-00626-RBM-DDL